**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**


| | | |
|---|---|---|
| **ROBIN ALLEN MORRIS,** | ) | **CASE NO.  1:05 CV 2211** |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **JUDGE DONALD C. NUGENT** |
| | ) | |
| **FAMILY DOLLAR STORES** | ) | |
| **OF OHIO, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | **MEMORANDUM OPINION** |


This matter is before the Court on Defendant's Motion for Summary Judgment.  Pursuant to

Rule 56 of the Federal Rules of Civil Procedure, Defendant Family Dollar Stores of Ohio, Inc., has

petitioned the Court for summary judgment on all of Plaintiff's claims.  Plaintiff's First Cause of Action

alleges that Plaintiff's employment was terminated in violation of the Family and Medical Leave Act of

1993 ('FMLA'), 29 U.S.C. § 2611, et seq.  Plaintiff's Second Cause of Action is a reverse

discrimination claim.  Plaintiff alleges that he was terminated because he is white/non-Hispanic, in

violation of the protections set forth in Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et

seq.  Plaintiff's Third Cause of Action alleges wrongful termination  of his employment based on

national origin in violation of Chapter 4112 of the Ohio Revised Code and wrongful termination in

violation of Ohio's public policy, based upon his claims that he was terminated in violation of the

FMLA; Title VII; and, Chapter 4112 of the Ohio Revised Code.  For the reasons set forth below,

Defendant's Motion for Summary Judgment is GRANTED.

## FACTUAL BACKGROUND

Plaintiff was hired by Defendant, Family Dollar in December 2001 as a Stock Associate.  After

six months, Plaintiff was promoted to Assistant Store Manager and less than one year later, in

December 2002, Plaintiff was promoted to Store Manager.  (Plaintiff's Response to Defendant's

Motion for Summary Judgment at p. 2.)  Plaintiff served as Store Manager in several Family Dollar

stores in the area and in September 2003, became the Store Manager of the Family Dollar Store

located at West 73rd and Detroit Road in Cleveland, Ohio ("the Detroit Road Store").  (*Id.*)

Ron Sheppard, a white male, was the Regional Manager for Family Dollar at the time in

question.  (Plaintiff's Depo. at pp. 159-60.)  Juan Melendez, a Hispanic male, was Plaintiff's District

Manager.  (*Id.* at pp. 49, 54, 86; Melendez Depo. at p. 130.)  Paul Shnepp was Plaintiff's Assistant

District Manager.  (Melendez Depo. at pp. 13-16.)  There was no evidence presented as to Mr.

Schnepp's race/national origin.  The two Assistant Store Managers at the Detroit Road Store, Mariely

Capestany and Carlos Lozado, are both Hispanic.  (Plaintiff's Depo. at pp. 54-55.)  Plaintiff was the

Store Manger at the Detroit Road Store until his employment ended in November 2004.

In late October 2004, Plaintiff informed either Mr. Melendez, his District Manager, or the

Assistant District Manager, Paul Schnepp, that he wanted to take one week of vacation because his

mother, who lives out of state, was undergoing surgery.  (Plaintiff's Response Brief at p. 3.)  Plaintiff's

request was approved.  (*Id.*)  He never inquired whether the leave would fall under the Family Medical

Leave Act.  *(Id.)*

On October 29, 2004, Plaintiff's mother underwent an outpatient needle biopsy of a lump in her breast.  Plaintiff felt he had to be with his mother for the procedure because he thought she had cancer and knew she would be physically and mentally bothered by the procedure.  *(Id.* at pp. 3-4.) Plaintiff stated that upon release from the hospital, his mother was bedridden for at least four days and he had to take care of her everyday needs.  *(Id.* at p. 4.)  Plaintiff stated that he cooked her meals and helped her to the bathroom.  *(Id.)*  Plaintiff claims that his mother suffered from headaches, stomach problems and dizziness, which she believes resulted from the anesthesia administered at the time of the biopsy.  *(Id.)*  In addition, she had pain and discomfort in her breast.  *(Id.)*

Plaintiff tended to his mother's care from October 30, 2004 through November 6, 2004. Plaintiff stated that he called the Store throughout the week to inquire about operations.  (Plaintiff's Depo. at pp. 98-103.)  Plaintiff did not speak to his District Manager, Mr. Melendez, during that week. *(Id.* at p. 110.)  Plaintiff drove back to Cleveland on November 7, 2004.  *(Id.* at p. 103.)  On November 8, 2004, Plaintiff claims that he arrived back at the store at 4:00 a.m. to meet the trucks delivering new merchandise and prepare the store.  (Plaintiff's Response Brief at p. 4.)  Plaintiff claims that when he arrived, he found a locksmith changing the locks to the store.  *(Id.)*  According to deposition testimony, the locks were changed for reasons unrelated to Plaintiff's employment. (Melendez Depo. at pp. 83-84.)  Plaintiff claims that two individuals were working to get the store open, one of whom was his eventual replacement, Jose Rivera.  (Plaintiff's Response Brief at p. 4.) Plaintiff claims that Mr. Rivera told him that he should call Mr. Melendez regarding his employment. *(Id.)*

-3-

At that point, Plaintiff stated that he returned home and at approximately 6:30 a.m. on that morning, November 8, 2004, called Mr. Melendez and left a voice mail message.  (*Id.*)  After his call was not returned, Plaintiff stated that he called Mr. Melendez again at least twice, the last call occurring at approximately 7:30 a.m., leaving voicemails.  (*Id.* at p.5.)  Plaintiff stated that neither Mr. Melendez, nor anyone at else Family Dollar, returned his calls.  (*Id.*)  According, to Plaintiff he did not attempt to contact anyone else at Family Dollar regarding his employment subsequent to his call to Mr. Melendez's voice mail at 7:30 a.m. on Monday, November 8, 2004.  (Plaintiff's Depo. at pp. 130-151.)  Plaintiff's employment with Family Dollar was officially terminated in mid-November 2004.

Plaintiff claims that he was terminated as a result of taking FMLA leave, relying upon the temporal proximity between his one week leave and his termination.  Plaintiff also claims that he was discriminated against on the basis of his race, white/non-Hispanic.  Specifically, Plaintiff claims that Mr. Melendez, his District Manager, wanted to replace him with Jose Rivera, a Hispanic Store Manager from another store, and alleged friend of Mr. Melendez, so that the store would have more Hispanic workers.

Defendant contends that Plaintiff was not terminated, but rather abandoned his employment with Family Dollar.  Defendant asserts that Mr. Melendez was informed by Assistant Store Manager Mariely Capestany that Plaintiff had called her on November 7, 2004 and informed her that he was resigning.[1]  Mr. Melendez claims that he unsuccessfully attempted to contact Plaintiff about his

---

[1]

Defendant submits the statement of Mariely Capestany as Exhibit A.  Ms. Capestany states on November 7, 2004, Plaintiff called her and told her he would not be returning to work.  Ms. Capestany claims that Plaintiff told her to call Juan Melendez and let him know that he would not be returning.  Plaintiff claims that this conversation never took place.  Ms.

-4-

employment status on November 7, 2004 and November 8, 2004.  Based upon Ms. Capestany's

alleged conversation with Plaintiff; the fact that Plaintiff had left his keys in the store when he left for

vacation;[2] and, Mr. Melendez's alleged inability to contact Plaintiff, Defendant claims that Mr.

Melendez believed that Plaintiff abandoned his employment.  Plaintiff was eventually replaced by Jose

Rivera.  Mr. Rivera, a Hispanic male, was a Store Manager at another Family Dollar store when he

was transferred to replace Plaintiff.

Although he claims to have left messages for Mr. Melendez on November 8, 2004, Plaintiff

never spoke to Mr. Melendez on November 8, 2004, nor at any time thereafter, regarding his

employment.  (Plaintiff's Depo. at pp. 147-149.)  Plaintiff never contacted Family Dollar Human

Resources regarding his employment status, even though he had contacted them in the past regarding at

least one unrelated issue.  (*Id.* at 148.)  Plaintiff never returned to the Store after November 8, 2004

and did not work any of his scheduled shifts after returning from his leave.  (*Id.* at pp. 146-47.)  Based

upon these actions and/or inactions by Plaintiff, and the statement of Ms. Capestany that Plaintiff had

resigned, Defendant claims that it processed Plaintiff's termination.

Plaintiff claims that he never told Ms. Capestany that he intended to resign.  Rather, Plaintiff

asserts that he was terminated because he took FMLA leave and because Mr. Melendez wanted to

replace him with a Hispanic employee, Mr. Rivera.

---

Capestany claims that Plaintiff did not show up at the store on November 8, 2004 and that he
called her that day to ask that she have Mr. Melendez call him.  Plaintiff attempted to depose
Ms. Capestany but she did not appear for deposition.

[2]        Plaintiff stated during deposition that there were only two sets of store keys and that he
left his set at the Store during his absence for use by the Assistant Store Managers.

## PROCEDURAL HISTORY

On August 30, 2005, Plaintiff filed his Complaint in the Cuyahoga County Court of Common Pleas, Case No. CV05570948.  On September 20, 2005, Defendant filed its Notice of Removal to this Court.  (Docket #1.)  In his First Cause of Action, Plaintiff alleges that he was terminated for absences in violation of the FMLA.  In his Second Cause of Action, Plaintiff claims that he was terminated from his position, and replaced by a Hispanic male who was a friend of Plaintiff's District Manager, in violation of Title VII.  In his Third Cause of Action, Plaintiff states that Defendant's discriminatory actions were in violation of the Ohio Civil Rights Act and/or in violation of Ohio public policy for wrongful discharge.

On October 20, 2006, Defendant filed its Motion for Summary Judgment.  (Docket #28.) First, Defendant claims that Plaintiff cannot establish he qualified for FMLA leave as a matter of law. Specifically, Defendant claims that Plaintiff never specifically requested FMLA leave, nor did he provide Defendant with sufficient details from which it could reasonably conclude that Plaintiff's vacation request was FMLA-qualifying; that Plaintiff cannot establish that his mother suffered from a "serious health condition" at the time he took vacation leave; that Plaintiff voluntarily abandoned his job and therefore cannot prove he suffered an adverse employment action; and, that there is absolutely no evidence of a causal connection between Plaintiff's leave and his termination.  Further, Defendant states that it had a legitimate, non-discriminatory reason for replacing Plaintiff, the belief that Plaintiff had voluntarily abandoned his job.  Defendant asserts that Plaintiff has failed to set forth evidence that its legitimate, non-discriminatory reason for replacing Plaintiff was pretextual.

Second, Defendant argues that Plaintiff has not set forth sufficient evidence to withstand

-6-

summary judgment as to his reverse discrimination claims under Title VII and/or Chapter 4112 of the

Ohio Revised Code.  Defendant asserts that Plaintiff has no direct evidence of reverse race

discrimination and cannot establish a prima facie case of reverse discrimination necessary to proceed on

an indirect evidence case.  Specifically, Defendant states that Plaintiff has failed to "clear the first

hurdle" of a reverse discrimination analysis by failing to present evidence that Family Dollar has a

history of discriminating against white employees, or that it is the "unusual employer who discriminates

against the majority."  Further, Defendant asserts that Plaintiff fails to establish a prima facie case of

reverse discrimination because he cannot prove that he was treated with disfavor as compared to

"similarly situated" Hispanic and/or foreign born employees.

Third, Defendant argues that Plaintiff cannot establish a claim for wrongful discharge in violation

of Ohio public policy because the statutes at issue provide substantive rights and remedies which

adequately protect society's interests.

On November 30, 2006, Plaintiff filed his Response to Defendant's Motion for Summary

Judgment.  (Docket #31.)  With regard to his FMLA claim, Plaintiff claims that he was qualified for

FMLA leave; gave proper notice that he was taking leave under the FMLA; that his mother suffered

from a "serious health condition" as defined in 29 U.S.C. § 2601(b)(2); and, that there was a causal

connection between Plaintiff's leave and his termination.  With regard to causation, Plaintiff asserts that

there is a genuine issue of material fact as to whether Mr. Morris quit or was fired, establishing that the

reason for termination articulated by Defendant was pretextual.

With regard to his Title VII and Ohio Rev. Code Chapter 4112 claims, Plaintiff points to the

fact that he was replaced with a Hispanic Store Manager, Jose Rivera, by a Hispanic District Manager,

-7-

Juan Melendez.  Plaintiff asserts that the reason advanced by Defendant for replacing Plaintiff, that

Plaintiff had abandoned his job, is a pretext for reverse discrimination.  Specifically, Plaintiff states that

"Mr. Melendez wanted to place a Hispanic in the store which was located in a Hispanic neighborhood

and which was staffed by mostly Hispanic sur named employees."  Plaintiff states that he was doing an

excellent job when he was replaced and argues that there is no evidence to explain why Plaintiff would

quit his job.

      Plaintiff claims that Mr. Melendez and Mr. Rivera had worked together previously at a Rite Aid

store in the mid-1990s and alleges that Mr. Melendez was behind Family Dollar's hiring of Mr. Rivera

by a previous District Manager, Ron Kozak, in 2003.  (Melendez Depo. at pp. 109-113.)  In February

2003, Mr. Rivera started as an Assistant Manager at the Clark Avenue Family Dollar Store.  (*Id.* at p.

111.)  In February 2004, Mr. Rivera became an Assistant Manager to Plaintiff at the Detroit Road

Family Dollar Store, but returned to the Clark Avenue store two months later as the Store Manager,

until he replaced Plaintiff in November 2004 at the Detroit Road Store.  (*Id.* at pp. 106-107.)  Mr.

Melendez and the Regional Manager, Ron Sheppard, were responsible for his transfer.  (*Id.* at p. 117.)

Mr. Rivera received several pay increases, which were approved by Mr. Melendez, after being

transferred to the Detroit Avenue Store.  (*Id.* at pp. 116-119.)  Salary increases required approval by

the Regional Manager.  (Melendez Depo. at p. 124.)

      Third, Plaintiff agrees that he cannot maintain a claim for wrongful discharge in violation of Ohio

public policy under the FMLA, but asserts that he can still bring such a claim relative to his race/national

origin cause of action.

      On December 14, 2006, Defendant filed its Reply Brief in Support of Its Motion for Summary

Judgment.  (Docket #37.)  Defendant reiterates its position that Plaintiff has not presented evidence to

support his claims under the FMLA, Title VII or Chapter 4112 of the Ohio Revised Code, and cannot

establish a claim for wrongful discharge in violation of the Ohio public policy against national origin

discrimination.

**SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate when the court is satisfied "that there is no genuine issue as

to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R.

CIV. P. 56(c).  The burden of showing the absence of any such "genuine issue" rests with the moving

party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the
> district court of the basis for its motion, and identifying those portions of 'the pleadings,
> depositions, answers to interrogatories, and admissions on file, together with affidavits, if
> any,' which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex v. Catrett*, 477 U.S. 317, 323 (1986) (citing FED. R. CIV. P. 56(c)).  A fact is "material" only

if its resolution will affect the outcome of the lawsuit.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

248 (1986).  Determination of whether a factual issue is "genuine" requires consideration of the

applicable evidentiary standards.  The court will view the summary judgment motion in the light most

favorable to the party opposing the motion.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475

U.S. 574, 587 (1986).

Summary judgment should be granted if a party who bears the burden of proof at trial does not

establish an essential element of their case.  *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th

Cir. 1995) (citing *Celotex*, 477 U.S. at 322).  Accordingly, "[t]he mere existence of a scintilla of

evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Copeland v. Machulis*, 57 F.3d 476, 479 (6ᵗʰ Cir. 1995) (citing *Anderson*, 477 U.S. at 252).  Moreover, if the evidence presented is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment. *Anderson*, 477 U.S. at 249-50 (citations omitted).

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmoving party.  The nonmoving party may not simply rely on its pleadings, but must "produce evidence that results in a conflict of material fact to be solved by a jury." *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 149 (6ᵗʰ Cir. 1995).  FED. R. CIV. P. 56(e) states:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

The Federal Rules identify the penalty for the lack of such a response by the nonmoving party as an automatic grant of summary judgment, where otherwise appropriate. *Id.*

Though parties must produce evidence in support of and in opposition to a motion for summary judgment, not all types of evidence are permissible.  The Sixth Circuit has concurred with the Ninth Circuit that "'it is well settled that only admissible evidence may be considered by the trial court in ruling on a motion for summary judgment.'" *Wiley v. United States*, 20 F.3d 222, 225-26 (6ᵗʰ Cir. 1994) (quoting *Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1181 (9ᵗʰ Cir. 1988)).  FED. R. CIV. P. 56(e) also has certain, more specific requirements:

> [Rule 56(e)] requires that affidavits used for summary judgment purposes be made on
> the basis of personal knowledge, set forth admissible evidence, and show that the
> affiant is competent to testify.  Rule 56(e) further requires the party to attach sworn or
> certified copies to all documents referred to in the affidavit.  Furthermore, hearsay
> evidence cannot be considered on a motion for summary judgment.

*Wiley*, 20 F.3d at 225-26 (citations omitted).  However, evidence not meeting this standard may be

considered by the district court unless the opposing party affirmatively raises the issue of the defect.

> If a party fails to object before the district court to the affidavits or evidentiary materials
> submitted by the other party in support of its position on summary judgment, any
> objections to the district court's consideration of such materials are deemed to have
> been waived, and [the Sixth Circuit] will review such objections only to avoid a gross
> miscarriage of justice.

*Id*. at 226 (citations omitted).

As a general matter, the district judge considering a motion for summary judgment is to examine

"[o]nly disputes over facts that might affect the outcome of the suit under governing law." *Anderson*,

477 U.S. at 248.  The court will not consider non-material facts, nor will it weigh material evidence to

determine the truth of the matter. *Id.* at 249.  The judge's sole function is to determine whether there is

a genuine factual issue for trial; this does not exist unless "there is sufficient evidence favoring the

nonmoving party for a jury to return a verdict for that party."  *Id.*

In sum, proper summary judgment analysis entails "the threshold inquiry of determining whether

there is the need for a trial--whether, in other words, there are any genuine factual issues that properly

can be resolved only by a finder of fact because they may reasonably be resolved in favor of either

party." *Anderson*, 477 U.S. at 250.

## DISCUSSION

**A.      Family and Medical Leave Act.**

In his First Cause of Action, Plaintiff alleges that he was terminated in violation of the Family Medical Leave Act.  Plaintiff claims that his approved, one week absence to care for his mother was covered by the FMLA and, therefore, that he was entitled to be returned to his position as Store Manager once he had returned.  Plaintiff claims that he gave proper notice for purposes of the FMLA that he was taking leave to care for his mother who suffered from a "serious health condition."  Plaintiff contends that there is a causal connection between his leave and his termination.

This Court applies the burden shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), to retaliation claims under the FMLA.  *See Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 313-16 (6th Cir. 2001) (applying the burden-shifting analysis to an FMLA-retaliation suit).  In order to establish a prima facie case of retaliation for taking FMLA leave, a plaintiff must show that (1) he was engaged in an activity protected by the FMLA; (2) the employer knew that he was exercising his rights under the FMLA; (3) after learning of the employee's exercise of FMLA rights, the employer took an employment action adverse to him; and, (4) there was a causal connection between the protected FMLA activity and the adverse employment action.  *Arban v. West Publ'g Corp.*, 345 F.3d 390, 404 (6th Cir. 2003).

Temporal proximity is insufficient in and of itself to establish causation. *See Nguyen v. City of Cleveland,* 229 F.3d 559, 567 (6th Cir. 2000) (refusing to find that temporal proximity was sufficient in itself to establish a causal connection, and declining to decide "how much evidence in addition to temporal proximity would be required"); *McNett v. Harden Comm. Fed. Credit Union,* 118 F.

App'x 960, 965 (6th Cir. 2004) (unpublished) ("[T]he employer's knowledge of the protected activity coupled with an adverse action occurring close in time can create an inference of causation *where the particular circumstances strengthen the inference of causation."*) (emphasis added) (citing Nguyen, 229 F.3d at 566).

If a prima facie case is established, the defendant must articulate a legitimate reason for replacing the plaintiff. The burden then shifts to the plaintiff to prove that the stated reason for replacing him is pretextual. *See Joostberns v. United Parcel Servs., Inc.,* 166 Fed. Appx. 783, 792-794 (6th Cir. 2006).

As the basis for his FMLA claim, Plaintiff relies solely upon the fact that his employment with Family Dollar ended the day after he returned from caring for his mother. However, in this case, there are no additional circumstances that can be identified by the Court which strengthen the inference that Plaintiff's termination resulted from taking FMLA leave. Even if the Court were to find that Plaintiff had given proper notice under the FMLA regarding his intention to take leave;[3] that Plaintiff's mother's outpatient needle biopsy rose to the level a "serious medical condition" as contemplated under the FMLA;[4] and, that Plaintiff's employment was in fact terminated by Defendant, there is no evidence

---

[3]

The FMLA does not require an employee to mention the FMLA by name when notifying an employer of FMLA leave. *Brohm v. JH Props., Inc.*, 149 F.3d 517, 523 (6th Cir. 1998). Rather, "'the critical question is whether the information imparted to the employer is sufficient to reasonably apprise it of the employee's request to take time off for a serious health condition.'" *Id.* (quoting *Manuel v. Westlake Polymers Corp.,* 66 F.3d 758, 764 (5th Cir. 1995)).

[4]

The FMLA guarantees leave for "serious medical conditions." Plaintiff's mother had an outpatient procedure, and had a follow-up visit a couple of weeks after she had the biopsy. (Plaintiff's Depo. at pp. 104-107.) The Court will not undertake a lengthy examination of

before the Court to support Plaintiff's assertion of a causal connection between his alleged FMLA

covered leave and his termination.  The only evidence in support of Plaintiff's claim that his was

terminated based upon taking FMLA leave is the fact that his employment ended upon returning from

his leave.  In this case, temporal proximity standing alone is insufficient to establish a causal connection.

The evidence before this Court shows that Plaintiff requested a one-week vacation at the end of

October 2004 to care for his mother who was having surgery.  (Plaintiff's Depo. at pp. 80-92;

Melendez Depo. at p. 57.)[5]  His mother was having an outpatient, needle biopsy of a breast lump.

(Plaintiff's Depo at pp. 104-105.)  Plaintiff's request was approved and he received one week of paid

vacation.  (*Id.* at pp. 104-105; Melendez Depo. at pp. 57-59.)  Upon his return, Plaintiff stated that he

learned that his employment was terminated.  However, Plaintiff stated during deposition that no one

ever told him that he was terminated because he took vacation time. (Plaintiff's Depo. at pp. 154-155.)

Aside from attempts to call Mr. Melendez on the morning he was scheduled to return to work, Plaintiff

made no attempt to ascertain why his employment ended.  Plaintiff has not established a causal

---

whether the biopsy constituted a "serious medical condition" and will assume that it was for
purposes of this Memorandum Opinion only, that it was, as Plaintiff's FMLA claim fails for lack
of causation.  However, the Court has serious doubts as to whether an outpatient needle biopsy
with one follow-up visit two weeks later would constitute a "serious medical condition" for
purposes of the FMLA.

[5]

      Plaintiff discussed additional details of the conversation he had with Mr. Melendez at
the time he requested the week absence.  Plaintiff claims that Mr. Melendez was "cussing" at
him like a "freaking maniac" and called him "Sean."  Plaintiff does not appear to allege that
these other parts of the conversation have any bearing on his claims in this lawsuit.  Plaintiff
claims to have called Human Resources regarding Mr. Melendez's behavior during their
conversation, and Mr. Melendez later apologized.  (Plaintiff's Depo. at pp. 91-97.)

-14-

connection between Plaintiff's absence and the termination of his employment.[6]

The Court recognizes that there is a factual dispute as to the events that transpired on the Sunday before Plaintiff was to return to work.  Defendant contends, and Plaintiff denies, that Plaintiff contacted Assistant Store Manager Capestany by phone on Sunday, November 7th, 2004 and stated that he would not be returning to work.  (Plaintiff's Depo. at pp. 144-145; Melendez Depo. at p. 65.)  This serves as the basis for Defendant's assertion that Plaintiff abandoned his job and needed to be replaced, as opposed to Plaintiff's assertion that he was terminated.  In reality, based on the deposition testimony offered by both Parties, operations at the Family Dollar store in question seem somewhat disorganized, as were communications between employees and managers.  However, this factual

---

[6]

Plaintiff also discussed an e-mail that he obtained after his employment was terminated regarding a mandatory Store Manager's budget meeting that was scheduled during the week that he was with his mother.  (Plaintiff's Depo. at pp. 116-122.)  Plaintiff stated during deposition that he was disciplined for missing the budget meeting.  (*Id.* at p. 117.)  However, Plaintiff stated that no one ever talked to him about the meeting or the e-mail, and that prior to and during his vacation no one ever told him that he would disciplined for missing the budget meeting.  (*Id.* at pp. 117; 127-129.)  During deposition, Plaintiff stated that when he returned after his vacation, Jose Rivera and Mariely Capestany told him that he was disciplined for taking the vacation.  However, he stated later that Jose Rivera told him only that he needed to contact Juan Melendez regarding his employment with Family Dollar and that he did not talk to Mariely Capestany after returning from his week absence.  (*Id.* at pp. 129-142; 151.)

In her statement, Mariely Capestany stated that she spoke to Plaintiff during his absence regarding the budget meeting and told him that he was excused and was not expected to attend.  Ms. Capestany also stated that Plaintiff called her on the evening of November 8, 2004, and asked that she have Mr. Melendez call him.  (Statement of Mariely Capestany, Defendant's Exhibit A.)

Although these facts are in dispute, they are not material to the determination of whether Plaintiff satisfied the elements of a prima facie case of retaliation for taking FMLA protected leave.  Plaintiff has not set forth evidence sufficient to raise the inference that he was terminated because of his absence.

dispute is immaterial.  Plaintiff has presented no evidence to support the assertion that he was

terminated because he took FMLA leave.

Based on the foregoing, there is no evidence upon which a jury could reasonably find in favor

of Plaintiff relative to his FMLA claim.  Plaintiff has failed to provide sufficient evidence of causation,

necessary to sustain his claim.  Accordingly, Defendant is entitled to Summary Judgment as a matter of

law as to Plaintiff's First Cause of Action.

**B.      Title VII/Ohio Revised Code Section 4112.**

Title VII prohibits employers from discriminating against employees on the basis of race.  42

U.S.C. § 2000e.  "It is well established that the burden is on an employment discrimination plaintiff to

establish a *prima facie* case of discrimination."  *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th

Cir. 1992) (citations omitted).  The Supreme Court of Ohio has held that "federal case law interpreting

Title VII of the Civil Rights Act of 1964, Section 2000e *et seq*., Title 42, is generally applicable to

cases involving alleged violations of OHIO REV. CODE ANN. § 4112."  *Plumbers & Steamfitters*

*Commt. v. Ohio Civil Rights Comm.*, 66 Ohio St.2d 192, 196 (1981).  Thus, the Court's

consideration of federal case law applies equally to Plaintiff's state and federal claims.  *See Mitchell v.*

*Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992) (stating that the district court correctly "lumped

together" plaintiff's Title VII and Ohio state law theories of discrimination).

Where the plaintiff does not have direct evidence of discrimination, courts use a burden-shifting

approach. The Supreme Court explained:

> First, the plaintiff has the burden of proving by the preponderance of the evidence a
> prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima
> facie case, the burden shifts to the defendant "to articulate some legitimate,
> nondiscriminatory reason for the employee's rejection." Third, should the defendant

> carry this burden, the plaintiff must then have an opportunity to prove by a
> preponderance of the evidence that the legitimate reasons offered by the defendant
> were not its true reasons, but were a pretext for discrimination.

*Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 252-53 (1981) (citing *McDonnell*

*Douglas Corp. v. Green,* 411 U.S. 792, 802, 804 (1973)).  To establish a prima facie case of race

discrimination under *McDonnell Douglas* and *Burdine,* (1) he is a member of a protected class; (2) he

was qualified for the job; (3) he experienced an adverse employment action; and (4) he was replaced

by a person outside the protected class or she was treated differently than a similarly situated non-

protected employee. *See Newman v. Federal Express Corp.,* 266 F.3d 401, 406 (6th Cir. 2001)

(citing *Talley v. Bravo Pitino Restaurant*, 61 F.3d 1241, 1246 (6th Cir. 1995)).

In reverse-discrimination cases, in order to establish the first prong of a prima facie case, a

plaintiff must demonstrate "background circumstances [to] support the suspicion that the defendant is

that unusual employer who discriminates against the majority." *Leadbetter v. Gilley*, 385 F.3d 683,

690 (6th Cir. 2004); *Murray v. Thistledown Racing Club, Inc.*, 770 F.2d 63, 67 (6th Cir. 1985).  To

establish such background circumstances, "evidence of [defendant's] unlawful consideration of race as

a factor in hiring in the past justifies a suspicion that incidents of capricious discrimination against whites

because of their race may be likely." *Jamison v. Storer*, 830 F.2d 194,1987 WL 44901, at *3

(1987).  To satisfy the fourth prong in a reverse-discrimination case, the plaintiff must show that the

defendant treated differently employees who were similarly situated but were not members of the

protected class. *Id.*

In this case Plaintiff has not demonstrated the "background circumstances" necessary to

support his reverse discrimination claim against Family Dollar.  The evidence before the Court illustrates

-17-

that the District and Region within which Plaintiff worked included managers and other employees who were of various races/national origins, including white/non-Hispanic, African American, Indian, and Hispanic.  Although Plaintiff's District Manager, Juan Melendez, was Hispanic, and the person who ultimately filled his position was Hispanic and had known Mr. Melendez previously, this is insufficient to establish a suspicion that Defendant discriminated against white/non-Hispanic employees.  Mr. Rivera was working as a Store Manager at a different Family Dollar store and when he was transferred to replace Plaintiff.  (*Id.* at pp. 115-116.)  Previously, Mr. Rivera had served as an Assistant Manager under Plaintiff at the Detroit Road store.  (*Id.*)

Plaintiff stated during his deposition that he has no facts to suggest that his employment was terminated because of his race, white.  (Plaintiff's Depo. at p. 156.)  Plaintiff stated that neither his manager, nor any other supervisor, made any comments regarding Plaintiff's race or national origin during his employment.  (*Id.* at pp. 152-154.)  Plaintiff states in his Response to Defendant's Motion for Summary Judgment that "Mr. Melendez wanted to place a Hispanic in the store which was located in a Hispanic neighborhood and which was staffed by mostly Hispanic sur named employees."  While the store may be located in a Hispanic neighborhood and be staffed by Hispanic employees, there is no support for Plaintiff's assertion that Mr. Melendez terminated Plaintiff so that he could place a Hispanic employee in the store.

The Court has reviewed the deposition transcripts of Plaintiff and Mr. Melendez in detail, and finds the following testimony to be relevant to the issue of "background circumstances":

- Plaintiff started as a stock boy on December 23, 2001, with Family Dollar at West 110th and Lorain.  His Store Manager was Cheryl Perez.  He was a

stock boy for six months when he was promoted to an Assistant Manager position at the Painesville Family Dollar Store.  Cheryl Perez and Juan Melendez told him that he would be promoted.  He worked at approximately five different Family Dollar Stores as an Assistant Manager.  He was subsequently approached by Mr. Melendez regarding a promotion and became a Store Manager in December 2002, at the Painesville Family Dollar Store. (Plaintiff's Depo. at pp. 32-42.)

• Plaintiff spent about a year as the Store Manager at the Family Dollar Store in Painesville.  The Store Manager before him, "Joanne," a white female, was terminated.  Plaintiff subsequently transferred to the Euclid Family Dollar Store after the Store Manager, an African American female named Penelope, was terminated.  Rob Kozak (white male), the District Manager at the time, and Ernie Cunningham (white male), the Assistant District Manager, discussed the transfer with him.  (Plaintiff's Depo. at pp. 43-47.)  Mr. Melendez served as the District Manager in Erie, Pennsylvania for a short period of time during Plaintiff's employment, but later returned to the District Manager position in Cleveland.  During that time, Rob Kozak was the District Manager and Ernie Cunningham was the Assistant District Manager.

• In August 2004, Plaintiff became the Store Manager at a brand new Family Dollar Store at W. 73rd and Euclid.  Again, Mr. Kozak, a white male, and Mr. Cunningham, a white male, discussed that transfer with him.  (Plaintiff's Depo. at pp. 49-51.)

• Plaintiff was responsible for hiring the complete staff at the Detroit Road location.  Plaintiff, with the input of five other store managers, the District Manager Rob Kozak (a white male), and the Assistant District Manager Ernie Cunningham (a white male),  made the decisions as to who should be hired. The other Store Managers involved in the decision making process were Cheryl Perez (Plaintiff did not know her race); Daniel Perez (Plaintiff did not know his race); Ron Odee (Plaintiff did not know his race); Clarence (a white male); and, an unnamed Indian woman.  (Plaintiff's Depo. at pp. 58-60.)

• Plaintiff objected to hiring Kim Walker (an African American female) and Michelle Valez (a Hispanic female) because he did not feel he could trust them. Plaintiff had considered Janette Hicksman (a white female) and Sheila Golic (an African American female) for the Assistant Store Manager positions. (Plaintiff's Depo. at pp. 62-63.)

It is of particular relevance to this Court that Plaintiff, in conjunction with the District Manager (a white male); the Assistant District Manager (a white male); and five other Store Managers, including individuals of Hispanic, white/non-Hispanic and Indian origin, made the decisions regarding who would be hired at the Detroit Road Store.  Although three of the four Assistant Managers hired were of Hispanic origin, the fourth being African American, they were hired upon the input of seven individuals, three of whom were white including Plaintiff.  Further, at the directions of Randy Booket, a white District Manager, Plaintiff terminated the employment of a white female employee and a black female employee.  Store Managers recommended individuals for promotion to Assistant Manager, and District Managers promoted employees to the position of Store Manager with the approval of the Regional Manager.  (Melendez Depo. at pp. 17-18.)  The testimony discussed above illustrates that Family Dollar management was composed of individuals of various races, who hired and fired individuals of various races.  Employees of various races were frequently promoted and/or moved between stores.[7]  What it does not prove is that Defendant was that unusual employer that discriminates against the majority.

Relative to the time Plaintiff's employment with Defendant ended, Ron Sheppard (a white male)

---

[7]

Plaintiff submits a copy of the Detroit Road Store's payroll records, a list which includes many Hispanic sur named employees.  However, Plaintiff stated during deposition that he was responsible, at least in part, for hiring the employees at the Detroit Road Store.  The Court recognizes that Plaintiff was replaced by Mr. Rivera.  As stated above, this fact alone does not establish a prima facie case for reverse discrimination.  Further, the payroll list does not provide the Court with any additional evidence that Family Dollar Stores was the type of employer that discriminates against the majority, or that he was treated differently than similarly situated Hispanic employees.

-20-

was the Regional Manager.  Mr. Melendez (a Hispanic male), as District Manager, was responsible for 23 stores.  (*Id.* at p. 8.)  Plaintiff stated during deposition that there were other white Store Managers in the District when he was terminated, and there were Store Managers who were African American. (Plaintiff's Depo. at pp. 156-57.)  Plaintiff stated that there were "maybe two" Hispanic Store Managers in the District when his employment ended, including Jose Rivera his replacement, and a woman named "Seda" who he stated was either Indian or Hispanic.  (*Id.* at pp. 157-159.)

Paul Shnepp, the Assistant District Manager under Mr. Melendez, performed most of the store visits for Mr. Melendez and Mr. Melendez had little contact with Plaintiff.  (Melendez Depo. at pp. 52; 53-55.)  Mr. Melendez stated that he only spoke with Plaintiff as the need arose, and did not speak with him daily or even weekly.  (*Id.* at pp. 54-55.)  Plaintiff received pay raises, bonuses and promotions during his employment with Defendant. (*Id.* at pp. 42-43.)  Mr. Melendez was not responsible for Plaintiff's promotion from Assistant Manager to Manager, nor was he responsible for Plaintiff's transfer between stores.  (*Id.* at pp. 19-35.)

The true question in this case appears to arise from the disputed statement of employee Mariely Capestany, to Mr. Melendez, that Plaintiff called the day before he was due to return to work and told her he would not be returning.  Defendants rely upon this alleged statement to Mr. Melendez for the argument that Plaintiff abandoned his job and was thus terminated.  Plaintiff claims he never told Ms. Capestany that he did not plan to return and that Defendant's reliance upon the alleged statement is a pretext for discrimination.  (Plaintiff's Depo. at pp. 144-45.)

The deposition testimony before this Court illustrates that the operations at Plaintiff's store were

unorganized and communication between the staff and managers at all levels was inconsistent.  From the

deposition testimony submitted by both Parties, it does not appear that Mr. Melendez was overly

involved with individual store operations or details on a day to day basis.  Regardless, these facts are

immaterial as Plaintiff has made no showing of the background circumstances necessary to establish a

prima facie case of reverse discrimination.  Further, it troubles the Court aside from a couple of

unreturned phone calls to Mr. Melendez, it does not appear that Plaintiff attempted to ascertain why his

employment with Family Dollar ended prior to filing this lawsuit.  (Plaintiff's Depo. at pp. 130-151.)  He

attempted to contact Mr. Melendez early on the day that he alleges he tried to return to work, but never

made any efforts beyond that to determine his status at Family Dollar or his future employment.  (*Id.*)[8]

Plaintiff never contacted the Assistant District Manager, nor did he contact anyone in the Human

Resources Department.

In addition to the above, the Court finds that it is important to note that whether or not Mr.

Melendez had a previous working relationship and/or friendship with Mr. Rivera which precipitated his

transfer to the Detroit Road store replace Plaintiff does not establish that Defendant was in any way an

employer that discriminates against the majority, or that Plaintiff's employment with Family Dollar ended

because he is white/non-Hispanic.

Based on the foregoing, there are no material issues of fact as to Plaintiff's claim that he was

discriminated against on the basis that he is white/non-Hispanic.  Accordingly, Defendant is entitled to

---

[8]

Although Ms. Capestany's statement relates that Plaintiff called her on the evening of
November 8, 2004 and asked that she have Mr. Melendez call him, Plaintiff's testimony does
not include this conversation.

Plaintiff's Second Cause of Action alleging reverse discrimination in violation of Title VII; and Plaintiff's Third Cause of Action alleging reverse discrimination in violation of Chapter 4112 of the Ohio Revised Code.

## III.    Wrongful Termination.

In Count III of his Complaint, Plaintiff argues that he was wrongfully terminated in violation of Ohio public policy.  Generally, in order to succeed on a wrongful discharge claim in violation of public policy under Ohio law, a plaintiff must show that (1) a "clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in the common law"; (2) that "dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy"; (3) "the plaintiff's dismissal was motivated by conduct related to the public policy"; and, (4) "the employer lacked overriding legitimate business justification for the dismissal."  *Parry v. Mohawk Motors of Mich., Inc.*, 236 F.3d 299 (6th Cir. 2000), cert. denied, 533 U.S. 951 (2001) (quoting *Painter v. Graley*, 70 Ohio St. 3d 377, 639 N.E.2d 51, 57 n.8 (Ohio 1994)).  The clarity and jeopardy elements are questions of law to be determined by the court. *Collins v. Rizkana*, 73 Ohio St. 3d 65, 70 (1995). Whereas, the jury decides factual issues relating to causation and overriding justification. *Id.*

Plaintiff claims that his termination was unlawfully based on one of two factors, either his asserted FMLA leave or the fact that he was white/non-Hispanic.  These two claims serve as the basis for his third claim that he was wrongfully terminated in violation of Ohio public policy.  Ohio courts have held that "[a] claim for wrongful discharge in violation of public policy embodied in [a] statute prohibiting discriminatory practices will fail if the underlying discrimination claim fails." *Sosby v. Miller*

-23-

*Brewing Co.*, 2006 U.S. App. LEXIS 29194 (6th Cir. 2006) (citing *Desanzo v. Titanium Metals*

*Corp.,* 351 F. Supp. 2d 769, 782-83 (S.D. Ohio 2005) (citations omitted)).[9]  As set forth above,

Plaintiff failed to provide evidentiary support for his claims sufficient to withstand summary judgment.

Further, Plaintiff has not identified any other public policy which was violated by his termination.  *Knox*

*v. Neaton Auto Prods. Mfg.*, 375 F.3d 451, 460 (6th Cir. 2004) (citing *Cochran v. Columbia Gas*

*of Ohio, Inc.*, 138 Ohio App. 3d 888, 895, 742 N.E.2d 734 (Ohio Ct. App. 2000) (affirming a grant

of summary judgment against appellant, where the court had determined that appellant failed to

establish grounds for relief under R.C. § 4112.02 and did not identify any other source of "clear public

policy" to sustain a wrongful discharge claim)).  Accordingly, there is no basis by which this Court can

find that Plaintiff's termination was in violation of Ohio public policy.  Defendant is entitled to summary

judgment on Count III of Plaintiff's Complaint as a matter of law.

## CONCLUSION

Based on the foregoing, Defendant, Family Dollar Store is entitled to summary judgment as a

---

[9]

      Plaintiff recognizes that Ohio does not recognize a claim for wrongful discharge in violation of public policy when the cause of action is based on an alleged violation of the FMLA. See *Wiles v. Medina Auto Parts,* 96 Ohio St.3d 240, 2002 Ohio 3994, 773 N.E.2d 526 (2002). As the Ohio Supreme Court has stated:

      Simply put, there is no need to recognize a common-law action for wrongful discharge if there already exists a statutory remedy that adequately protects society's interests. In that situation, the public policy expressed in the statute would not be jeopardized by the absence of common-law wrongful-discharge action in tort because an aggrieved employee has an alternate means of vindicating his or her statutory rights and thereby discouraging an employer from engaging in the unlawful conduct.

*Id.* at 244 (citations omitted.)

matter of law.  Accordingly, Defendant's Motion for Summary Judgment (Docket #28) is hereby

GRANTED.

IT IS SO ORDERED.

 s/Donald C. Nugent                                    

DONALD C. NUGENT

United States District Judge

DATED: March 20, 2007